GERALD SINGLETON (SBN 208783)
BRODY A. McBRIDE (SBN 270852)
SINGLETON LAW FIRM, APC
115 West Plaza Street
Solana Beach, CA  92075
Tel:   (760) 697-1330
Fax:  (760) 697-1329
Email:   gerald@geraldsingleton.com
             brody@geraldsingleton.com

MARC APPLBAUM, (SBN 222511)
KETTNER LAW CORP
2150 West Washington Street, Suite 104
San Diego, CA 92110
Tel:   (619) 756-7300
Fax:  (619) 363-3944
Email:  marc@kettnerlawcorp.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GODOLYA BOND,<br><br>  Plaintiff,<br><br>  v.<br><br>CITY OF SAN DIEGO, San Diego Police Officer SARAH SUTTER, San Diego Police Officer JOELLE LUEDEKE,<br><br>  Defendants. | Case No.  '16CV2420 BEN WVG<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

## INTRODUCTION

1. Pursuant to 42 U.S.C. § 1983 and various state laws, plaintiff Godolya Bond ("Mr. Bond") now sues defendants City of San Diego, San Diego Police Officer Sarah Sutter ("Officer Sutter") and San Diego Police Officer Joelle Luedeke ("Officer Luedeke") for recovery of damages arising from Officers Sutter's and Luedeke's actions

against Mr. Bond on March 25, 2016.

2. On March 25, 2016, Officers Sutter and Luedeke used excessive force to detain and then arrest Mr. Bond after Mr. Bond declined to engage in a consensual encounter with these officers. Officers Sutter and Luedeke acted pursuant to an unofficial policy and practice, among San Diego Police Department personnel, involving routine detentions and searches of the San Diego public, which are accomplished through the use of excessive force, and which are conducted without the individualized determinations required to detain, arrest, search, and/or use force on an individual.

3. Mr. Bond now seeks compensation for the injuries he suffered as a result of Officers Sutter's and Luedeke's actions, and as a result of the City of San Diego's deliberate indifference to the unofficial policy and practice pursuant to which Officers Sutter and Luedeke acted.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, as Plaintiff asserts causes of action arising under 42 U.S.C. § 1983 and state-law claims related thereto.

5. The Court has personal jurisdiction over Defendants in this action, as each of Defendants were located or domiciled in the State of California at the time of the events giving rise to this action.

6. Plaintiff has complied with the California Government Code requirements necessary to assert state-law claims against Defendants.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, as the events giving rise to this action occurred in the City of San Diego, California, which is located within the Southern District of California.

## PARTIES

8. Mr. Bond is an individual who, at all times relevant hereto, was domiciled in California.

9. Defendant City of San Diego ("City") is a municipal entity duly organized

under California law. The San Diego Police Department ("SDPD") is the City of San Diego's primary law-enforcement agency.

10. Officer Sutter is an individual who, at all times relevant hereto, was domiciled in California and was also a City of San Diego employee engaged in the course and scope of her employment as a police officer. In her role as a San Diego Police Officer, Officer Sutter acted under color of state law in that she, among other things, was responsible for enforcing the laws of the State of California and did, in fact, detain and arrest Mr. Bond on March 25, 2016.

11. Officer Luedeke is an individual who, at all times relevant hereto, was domiciled in California and was also a City of San Diego employee engaged in the course and scope of her employment as a police officer. In her role as a San Diego Police Officer, Officer Luedeke acted under color of state law in that she, among other things, was responsible for enforcing the laws of the State of California and did, in fact, detain and arrest Mr. Bond on March 25, 2016.

## FACTS

12. At around 3:00 p.m., on March 25, 2016, Officers Sutter and Luedeke arrived at a residence located at 7411 Hillside Drive in the La Jolla neighborhood of the City of San Diego in response to a report that three black men were burgling a home . . . situated behind a gated fence . . . using a U-Haul . . . in broad daylight.

13. Contrary to the reporting party's (apparently prejudiced) assumption, however, Mr. Bond—a combat veteran currently working on a master's degree in business—was not burglarizing the house at 7411 Hillside Drive. Rather, Mr. Bond was helping his friend, the owner of the house, move, in broad daylight. The son of Mr. Bond's friend was also helping with the move.

14. Officers Sutter and Luedeke first contacted Mr. Bond from the public side of the fence that encloses 7411 Hillside Drive. The fence is a combination of stucco and ornamental iron, and measures approximately 6 feet tall. As Mr. Bond carried a box to the U-Haul, Officers Sutter and Luedeke demanded that Mr. Bond approach them at the

fence. Mr. Bond stayed behind the fence and inquired as to their purpose. Hearing the interaction, Mr. Bond's friend (the homeowner) then exited the house, stated he lived there, and asked what was happening. Mr. Bond and the homeowner still declining to engage in a consensual encounter, Officers Sutter and Luedeke jumped over the fence into the enclosed driveway area between the fence and the front of the house.

15. All present having moved to the section of the driveway near the threshold of the front door, Officer Sutter proceeded, for unknown reasons, to handcuff the homeowner, who offered no resistance. Around this time, Mr. Bond began filming the incident with his smart phone.

16. While Mr. Bond was filming, Officer Sutter indicated Mr. Bond was too close. When Mr. Bond attempted to step back, Officer Sutter stated that, actually, Mr. Bond was also detained. So when Mr. Bond stepped across the threshold, through the open front door of the house, Officer Sutter and/or Officer Luedeke followed him, grabbing his arms, forcing him to the floor, and handcuffing him inside the house. In doing so, the officers injured Mr. Bond's leg/hip. And given the frequency with which unarmed black men have been injured or killed by law-enforcement officers, Mr. Bond experienced intense fear and anxiety when the officers grabbed him, forced him to the ground, and handcuffed him.

17. Shortly thereafter, Officers Sutter and Luedeke's supervisor, a currently unknown San Diego Police Sergeant, arrived on scene. After reviewing the incident, including reviewing the video footage from the officers' body-worn cameras, the sergeant apologized to Mr. Bond and his friend, the homeowner, and no charges were filed against anyone present.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 – Unreasonable Seizure
### (Against Officers Sutter and Luedeke)

18. The foregoing paragraphs are incorporated herein by this reference.

19. On March 25, 2016, Officers Sutter and Luedeke, as they stood on the

public side of the fence enclosing 7411 Hillside Drive, first attempted to engage Mr. Bond in a consensual encounter. When Mr. Bond declined to engage in a consensual encounter, Officers Sutter and Luedeke jumped over the fence, into the curtilage of 7411 Hillside Drive, where they detained and arrested, without legal justification, the homeowner of 7411 Hillside Drive and then detained and arrested, without legal justification, Mr. Bond as Mr. Bond was filming the incident. In detaining and arresting Mr. Bond, Officers Sutter and Luedeke used excessive force in grabbing Mr. Bond by his arms, forcing him to the ground, and handcuffing him, thereby injuring Mr. Bond's leg/hip and causing Mr. Bond to suffer intense fear and anxiety.

20. Officers Sutter and Luedeke had no legal justification to even jump onto the private side of the fence enclosing 7411 Hillside Drive, they had no legal justification to arrest and detain the homeowner of 7411 Hillside Drive, and they had no legal justification to arrest and detain Mr. Bond. Officers Sutter's and Luedeke's seizure of Mr. Bond was therefore unreasonable under the Fourth Amendment, and any force used by Officers Sutter and Luedeke to detain and arrest Mr. Bond was, by extension, also unreasonable under the Fourth Amendment.

21. In using physical force to detain and arrest Mr. Bond, Officers Sutter and Luedeke acted under color of state law, in that they were purportedly investigating a violation of, and enforcing, California law.

22. As a direct and foreseeable result of Officers Sutter's and Luedeke's actions against Mr. Bond, Mr. Bond suffered general and special damages, including emotional distress, physical injury, and loss of liberty. Mr. Bond thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

23. Because Officers Sutter and Luedeke had no legal basis to detain Mr. Bond, and because Officers Sutter and Luedeke persisted in arresting Mr. Bond through the use of excessive force, Officers Sutter and Luedeke acted in reckless disregard of Mr. Bond's Fourth Amendment rights. Accordingly, Mr. Bond should be awarded to punitive damages in an amount that will both punish Officers Sutter's and Luedeke's

conduct and deter such conduct in the future.

## SECOND CAUSE OF ACTION

## 42 U.S.C. § 1983 – *Monell*

## (Against City)

24. The foregoing paragraphs are incorporated by this reference.

25. The City is liable for the deprivation of Plaintiff's constitutional rights under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), and its progeny, which hold that a local governing body may be held liable for violations of constitutional rights committed by the entity's employees if the violations arose from:

    a. an expressly adopted official policy or a permanent, widespread, well-settled practice or custom that constitutes a standard operating procedure;

    b. one of the entity's final policymakers depriving an individual of his or her particular rights while acting as a final policymaker;

    c. the ratification of an employee's acts (or failure to act) by an individual with final policy-making authority; and/or

    d. training policies not adequate to train the entity's employees to handle the usual and recurring situations with which they must deal, along with deliberate indifference to the obvious consequences of such a failure to train.

26. The City is liable under *Monell*, in that Mr. Bond's detention and arrest was not only a result of an unconstitutional practice or custom (namely, a practice or custom involving routine detentions and searches of the San Diego public, which are accomplished through the use of excessive force, and which are conducted without the individualized determinations required to detain, arrest, search, and/or use force on an individual), it was also the result of a failure to train police officers to perform their duties within the bounds of the Fourth Amendment. Indeed, the uniformity in which the individual officers here acted in reckless disregard of Plaintiff's rights demonstrates both

the existence of such a practice or custom, and lack of adequate training. This practice or custom, along with the City's deliberate indifference to this lack of training, were moving forces behind Officers Sutter's and Luedeke's violations of Plaintiff's constitutional rights.

27. As a direct and foreseeable result of Officers Sutter's and Luedeke's actions against Mr. Bond, Mr. Bond suffered general and special damages, including emotional distress, physical injury, and loss of liberty. Mr. Bond thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### Cal. Civ. Code § 52.1(b) – Bane Act

### (Against Officer Sutter, Officer Luedeke, and City of San Diego)

28. The foregoing paragraphs are incorporated herein by this reference.

29. When Mr. Bond attempted to walk away from a consensual encounter with Officers Sutter and Luedeke on March 25, 2016, Officers Sutter and Luedeke used physical coercion (including brute force and handcuffing) to prevent Mr. Bond from moving about freely even though Officers Sutter and Luedeke had no lawful basis to detain or arrest Mr. Bond. Officers Sutter and Luedeke thus used physical coercion to prevent Mr. Bond from enjoying his right to liberty and his right to be free from unreasonable seizures.

30. As a direct and foreseeable result of Officers Sutter's and Luedeke's actions against Mr. Bond, Mr. Bond suffered general and special damages, including emotional distress, physical injury, and loss of liberty. Mr. Bond thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

31. Moreover, because Officers Sutter and Luedeke were acting in the course and scope of their employment as San Diego Police Officers when the foregoing conduct occurred, the City of San Diego is vicariously liable for the injuries Mr. Bond suffered as a result of Officers Sutter's and Luedeke's tortious conduct. *See* Cal. Gov't Code § 815.2.

## FOURTH CAUSE OF ACTION

### Negligence

### (Against Officer Sutter, Officer Luedeke, and City of San Diego)

32. The foregoing paragraphs are incorporated herein by this reference.

33. At the time of the incident giving rise to this action, Officers Sutter and Luedeke owed Mr. Bond a duty of ordinary care in executing their duties as San Diego Police Officers and, in particular, in using any amount of force to detain and arrest Mr. Bond.

34. Officers Sutter and Luedeke breached the foregoing duty on March 25, 2016, when, without legal justification, Officers Sutter and Luedeke used force (including brute force and handcuffing) to detain and arrest Mr. Bond.

35. As a direct and foreseeable result of Officers Sutter's and Luedeke's actions against Mr. Bond, Mr. Bond suffered general and special damages, including emotional distress, physical injury, and loss of liberty. Mr. Bond thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

36. Moreover, because Officers Sutter and Luedeke were acting in the course and scope of their employment as San Diego Police Officers when the foregoing negligence occurred, the City of San Diego is vicariously liable for the injuries Mr. Bond suffered as a result of Officers Sutter's and Luedeke's tortious conduct. *See* Cal. Gov't Code § 815.2.

## FIFTH CAUSE OF ACTION

### Battery

### (Against Officer Sutter, Officer Luedeke, and City of San Diego)

37. The foregoing paragraphs (except those falling under Plaintiff's causes of action for negligence) are incorporated herein by this reference.

38. In using physical force to detain, arrest, and imprison Mr. Bond on March 25, 2016, Officers Sutter and Luedeke engaged in actions which resulted in harmful and offensive contacts with Mr. Bond's person.

39. At no point did Mr. Bond consent to any contact by Officers Sutter or Luedeke.

40. As a direct and foreseeable result of Officers Sutter's and Luedeke's harmful and offensive contacts with Mr. Bond's person, Mr. Bond suffered general and special damages, including emotional distress, physical injury, and loss of liberty. Mr. Bond thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

41. Moreover, because Officers Sutter and Luedeke were acting in the course and scope of their employment as San Diego Police Officers when the foregoing battery occurred, the City of San Diego is vicariously liable for the injuries Mr. Bond suffered as a result of Officers Sutter's and Luedeke's tortious conduct. *See* Cal. Gov't Code § 815.2.

## SIXTH CAUSE OF ACTION

### False Imprisonment

### (Against Officer Sutter, Officer Luedeke, and City of San Diego)

42. The foregoing paragraphs (except those falling under Plaintiff's causes of action for negligence) are incorporated by this reference.

43. In detaining and arresting Mr. Bond on March 25, 2016, Officers Sutter and Luedeke confined Mr. Bond for an appreciable period of time.

44. At no point did Mr. Bond consent to being detained or arrested. And Officers Sutter's and Luedeke's detention and arrest of Mr. Bond was entirely without lawful privilege.

45. As a direct and foreseeable result of Officers Sutter's and Luedeke's false imprisonment of Mr. Bond, Mr. Bond suffered general and special damages, including emotional distress, physical injury, and loss of liberty. Mr. Bond thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

46. Moreover, because Officers Sutter and Luedeke were acting in the course and scope of their employment as San Diego Police Officers when the foregoing conduct

occurred, the City of San Diego is vicariously liable for the injuries Mr. Bond suffered as a result of Officers Sutter's and Luedeke's tortious conduct. *See* Cal. Gov't Code § 815.2.

## PRAYER FOR RELIEF

Based on the foregoing allegations, Plaintiff demands:

(1) that judgment be rendered in favor of Plaintiff and against Defendants on all causes of action asserted herein;

(2) compensatory damages (including economic and non-economic damages), in amounts to be determined at trial;

(3) punitive damages, against Officers Sutter and Luedeke only, in an amount sufficient to punish the conduct giving rise to this action and to deter such conduct in the future;

(4) reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988, Cal. Gov't Code § 52.1(h), and all other relevant statutory and case law; and

(5) any and all other relief in law or equity to which Plaintiff may be entitled and which this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands, under the Seventh Amendment, a trial by jury as to each and every cause of action asserted herein.

Dated: September 27, 2016         Singleton Law Firm, APC

                                                 By:    s/ Brody McBride
                                                       Brody A. McBride, Esq.

                                                Attorneys for Plaintiff